THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* BENJAMÍN ORTIZ CASTRO, k/a ELEUTERIO ORTIZ CASTRO, Defendant and Appellant.

No. CR-63-273. Decided June 11, 1964.

*Miguel Ángel Salicrup Cabello,* attorney designated by the Supreme Court to aid defendant on appeal. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

On June 27, 1961, appellant Benjamín Ortiz Castro was accused and convicted of forgery consisting of altering a copy of the lottery list for March 20, 1961 to include No. 26509 therein as a winning number when actually it was not, thereby causing Andrés Vicente Santiago to change 15 pieces of said number for the amount of $100 cash and the balance up to $238 in lottery tickets for subsequent drawings. He was sentenced to serve 5 to 14 years in the penitentiary. At the commencement of the trial appellant requested his peremptory acquittal because "the information, as drawn up, does not adduce facts constituting the crime of forgery."

580

The trial judge overruled said motion, as the forgery alleged consisted of having altered a lottery list; that said list is an *instrumento*; and that the term *instrumento* is included in the enumeration of documents the alteration of which may constitute forgery. (Section 413 of the Penal Code—33 L.P.R.A. § 1641.)[1]

On appeal appellant assigned as error that the trial court had overruled said motion for peremptory acquittal. It is argued that the enumeration of documents in the definition of forgery in § 413 of the Penal Code is specific and what is not included therein is excluded; that when the Penal Code

---

[1] Our § 413 of the Penal Code in English translates the term *instrumento* as indenture. It reads:

"Every person who, with intent to defraud another, falsely makes, alters, forges, or counterfeits any charter, letterspatent, deed, lease, *indenture*, writing obligatory, will, testament, codicil, annuity, bond, covenant, bankbill or note, post-note, check, draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for money or property, passage ticket, power of attorney, or any certificate of any share, right, or interest in the stock of any corporation or association, or any controller's warrant for the payment of money at the treasury, treasurer's order or warrant, or request for the payment of money, or the delivery of goods or chattels of any kinds, or for the delivery of any instrument of writing, acquittance, release or receipt for money or goods, any acquittance, release, or discharge for any debt, account, suit, action, demand, or other thing, real or personal, or any transfer or assurance of money, certificates of shares of stock, goods, chattels, or other property whatever or any letter of attorney, or other power to receive money, or to receive or transfer certificates or shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other state, real or personal, or any acceptance of indorsement of any bill of exchange, promissory note, draft, order or assignment of any bonds, writing obligatory, or promissory note for money or other property, or counterfeits or forges the seal or handwriting of another, or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above named false, altered, forged or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged or counterfeited, with intent to prejudice, damage, or defraud, any person; or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is guilty of forgery."

of Puerto Rico was enacted it prohibited the lottery game, so that when forgery was defined in said Code it is evident that the lottery list was not included among the documents enumerated in the definition of said offense; that it was not until June 6, 1963 that Act No. 46 of 1963 was enacted (15 L.P.R.A. §§ 122 to 123(a)), by virtue of which the official lottery list is included among the documents the alteration of which, forgery, or counterfeiting of which constitutes the crime of forgery, as provided by § 413 of the Penal Code.[2]

 Appellant is right. Section 413 of the Penal Code is derived from § 470 of the Penal Code of California, so that in case of discrepancy in said provision between the English and the Spanish texts, the English text shall prevail over the Spanish. Section 13 of the Civil Code (31 L.P.R.A. § 13); *People* v. *Zayas*, 72 P.R.R. 17, 19 (1951). The term *instrumento* included in the enumeration of documents in the definition of forgery is a translation of the term indenture used in § 470 of the Penal Code of California. We must decide, therefore, whether a copy of the official lottery list of

---

[2] Section 2 of Act No. 46 of June 6, 1963 provides:

"Section 13 of the Lottery Act of Puerto Rico is hereby amended to read:

Section 13.—The tickets of the Puerto Rico Lottery shall be considered as securities of the Government of Puerto Rico, and any person who, with intent to defraud another, or the Commonwealth of Puerto Rico, falsely makes, alters, forges, or counterfeits any lottery ticket of the Puerto Rico Lottery or fraction thereof, or the official list of winning numbers printed or circulated by the Secretary of the Treasury, or circulates, publishes, passes, or attempts to pass, as true and genuine, any ticket of the Puerto Rico Lottery or fraction thereof, or the official list of winning numbers knowing the same to be false, altered, forged or counterfeited, shall be guilty of forgery, as prescribed in Section 413 of the Penal Code, and upon conviction thereof shall be punished by the penalty prescribed for said offense."

"Section 13-A.—For a person to possess, circulate, publish, pass or attempt to pass as true and genuine, any ticket of the Puerto Rico Lottery or fraction thereof, or official list of winning numbers thereof, shall constitute prima facie evidence of his intent to defraud another, or the Commonwealth of Puerto Rico."

the Lottery of Puerto Rico is an indenture. To that effect we must construe the term of the statute restrictively, particularly if in referring to the documents enumerated the statute itself provides in relation to *"any of the above named false, altered, forged or counterfeited matters, as above specified and described."* Sections 3 and 5, Penal Code; § 14, Civil Code (33 L.P.R.A. §§ 3 and 5; 31 L.P.R.A. § 14) ; *The People* v. *Terrasa,* 28 P.R.R. 10, 12 (1920) ; *The People* v. *Benítez,* 19 P.R.R. 235, 249, 250 (1913). *Street* v. *United States,* decided March 28, 1964 (8th Cir.)—22 L.W. 2597.

■ The term indenture means a deed in which two or more persons enter into reciprocal grants or obligations or agree to both things. Black's Law Dictionary, 4th ed., p. 911. In a broader sense a conveyance is implied. Historically an indenture was a transfer of real estate and the term is commonly limited to instruments related to real estate and it does not apply to a bond which is a contract of payment. *Mendelson* v. *Realty Mortg. Corporation,* 241 N.W. 154 (Mich. 1932). See the cases of *Shirey* v. *Dowling,* 20 So.2d 500 (Fla. 1945) ; *Louisville & N.R. Co.* v. *Nelson,* 89 S.E. 693 (Ga. 1916), where a part of the opinion in *Atlanta K. & N. Ry. Co.* v. *McKinney,* 53 S.E. 701 (Ga. 1906), is cited as authority, in which it is said that a person is bound by the covenants of an indenture by virtue of which lands are conveyed although he did not sign the deed but accepted it, and entered upon the land; *Millikan* v. *Hunter,* 100 N.E. 1041 (Ind. 1913). See, *Deed indented or indenture,* in Black's Law Dictionary, 4th ed. p. 503. In California, the term indenture is used in statutes relating to government issuance of revenue bonds (Calif. Words, Phrases and Maxims, Vol. Fill to Moot, p. 270). In present practice of finance indenture is generally known as the instrument providing the terms and conditions related to the issuance of private or public bonds.

■ From the foregoing it is evident that a lottery list is not an indenture, that is, an instrument creating reciprocal rights and reciprocal obligations between two or more parties, but rather a notice to the public in general of the winning numbers in the lottery drawing to which it refers. Furthermore, the intent of the Legislative Assembly in not including the lottery list in the enumeration of the documents in the definition of forgery is inferred from two circumstances, that is, that when the Penal Code was enacted the lottery did not exist and, on the contrary, the Code itself prohibited it, and that in 1963 § 13 of the Lottery Act was amended for the purpose of including the offense of forgery provided by § 413 of the Penal Code, for forging or imitating the official lottery list and passing it as genuine, which is what appellant did with the intent to defraud, as he actually defrauded, Andrés Vicente Santiago. Act No. 46, *supra*.[3]

■ The Solicitor General maintains that forgery was committed in this case because "when in order to carry out the fraud, one . . . forges . . . *any document*, . . . the offense committed is that of forgery" and that "the gist of the crime consists of the intention to . . . defraud any person knowing that *the document* is false." The cases of *People v. Perazza*, 53 P.R.R. 560, 562 (1938) and *People v. Rivera*, 69 P.R.R. 381, 383 (1948), from which these quotations are taken, dealt with the forgery of checks which are *documents specifically enumerated* in the statute on forgery. The cases of California cited by the Solicitor General also dealt with documents specifically covered by the statute, such as checks in *People v. Jones*, 27 Cal. Rptr. 35 (1962); *People v. Morgan*,

---

[3] In the report of the Judiciary Committee of the Senate of Puerto Rico the following is stated in relation to Senate Bill No. 474 which was later enacted as the aforementioned Act No. 46:

"On the other hand the Department has met countless cases where the lottery list has been forged. *There is nothing in the law in force which permits the prosecution of such offenders.*" (Italics ours.) Senate Report, May 23, 1963 (Vol. XVII, No. 89, pp. 1701–1702).

296 P.2d 75 (1956); *People* v. *Gayle*, 202 Cal. 159, 259 Pac. 750 (1927); *People* v. *Whitaker*, 127 Cal. App. 370, 15 P.2d 883 (1932); or a letter constituting a binding declaration against interest and a foreclosure of mortgage purporting to transfer notes and mortgages in *People* v. *McKenna*, 11 Cal.2d 327, 79 P.2d 1065 (1938). In *People* v. *Davidian*, 20 Cal. A.2d 720, 67 P.2d 1085 (1937), it was decided that the person who procures or offers a false or forged will is guilty of forgery. The decision in question was based on the decision in *Whitaker*, *supra*, that the making or passing of a forged instrument constitutes forgery. *Davidian*, *supra*, as well as in *Whitaker*, *supra*, dealt with forged instruments specifically related in § 470 of California equivalent to § 413 of the Penal Code in force. We do not agree with the Solicitor General in that the terms "document" or "instrument" may be considered as included in said § 413 so that forgery in any of them, no matter its nature or class, entails the offense of forgery. Lastly, in support of the information, the Solicitor General cites the case of *People* v. *Searcy*, 18 Cal. Rptr. 779 (1962), in which it was said that the forgery of a credit slip could be subject to forgery, notwithstanding it was obtained on the basis of a stolen credit card, which document was unknown at the date of enactment of the statute which establishes and defines forgery. He is not right, because in this case the court decided that said credit sales slip constitutes an implied promise to pay for the merchandise described on the slip; that the delivery of the merchandise, gasoline and tires, constitutes the "consideration" for the implied promise. The trial court stated that the stealing of the merchandise was larceny, and hence, the false signing of the implied promise to pay therefor is forgery. The instrument in this case constitutes either a *written obligation* or *due bill for the payment of money or property*, documents specifically related in the definition of the statute of forgery.

The facts of the case could justify, as we decided in *People* v. *Rosado*, 76 P.R.R. 362, 364 (1954), and in *People* v. *Ríos*, 69 P.R.R. 774, 781 (1949), the formulation of a different information. In the case at bar defendant could be accused of larceny through fraud or trickery as we stated in *People* v. *Andrade González*, 88 P.R.R. 845 (1963), or by defrauding money or property by false representation or pretenses, pursuant to § 470 of the Penal Code (33 L.P.R.A. § 1815), but said action would depend on whether the statutory term has prescribed. Section 78, Penal Code; *People* v. *Lugo*, 58 P.R.R. 185 (1941); *People* v. *Capestany et al.*, 37 P.R.R. 547 (1928).

For the reasons stated the judgment rendered by the Superior Court, Guayama Part, on February 20, 1962, will be reversed and defendant will be acquitted.[4]

---

[4] The diligent work performed by the attorney to whom appellant's legal assistance was assigned merits due acknowledgment.